**WILLIG, WILLIAMS & DAVIDSON**
Ryan Allen Hancock
Attorney I.D. No. 92590
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: (215) 656-3679
Facsimile: (215) 561-5135
Email:  rhancock@wwdlaw.com

*Counsel for Plaintiff*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN JONES,<br><br>      Plaintiff,<br><br>  v.<br><br>JOHNSON & JOHNSON CONSUMER, INC.,<br><br>      Defendant. | CIVIL ACTION NO.<br><br>DEMAND FOR JURY TRIAL |

### CIVIL ACTION COMPLAINT

Plaintiff, Jonathan Jones (hereinafter "Plaintiff" or "Mr. Jones"), by and through his counsel, brings this civil action against the Defendant, Johnson & Johnson Consumer, Inc. (hereinafter "Defendant" or "J & J"), seeking all available remedies under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), § 5(a) and (d) of the Pennsylvania Human Relations Act, 43 P. S. § § 951-963 ("PHRA"), and Philadelphia's Fair Practices Ordinance

("PFPO"), Section 9-1101 *et seq.*[1] Specifically, Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deem appropriate.

## PARTIES

1. Plaintiff, Jonathan Jones, is an African American male individual, residing in Landsdale, PA. Plaintiff worked for Defendant as a Warehouse Associate.

2. Defendant maintains a place of business at 7050 Camp Hill Rd., Fort Washington, PA 19034.

3. Defendant is a member of Johnson & Johnson's Family Companies.

4. Defendant is one of the world's largest consumer health and personal care products company.

5. At all relevant times, Defendant was an "employer" for purposes of Title VII, PHRA, and Philadelphia's Fair Practices Ordinance.

6. At all times relevant hereto, Plaintiff was employed by the Defendant.

7. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of which acted within the scope of his or his job responsibilities.

## JURISDICTION AND VENUE

8. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

---

[1] Plaintiff's claims under the PHRA and PFPO are referenced herein for notice purposes. Mr. Jones is required to wait one year before initiating a lawsuit from date of dual filing an administrative complaint with the Equal Employment Opportunities Commission. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under Title VII. Plaintiff's PHRA and PFPO claims however will mirror identically his federal claims under Title VII.

9. This Court has original subject matter jurisdiction over Mr. Jones' federal claims pursuant 28 U.S.C. § 1331 and 1343(a)(4).

10. Mr. Jones' PHRA and FPO claims are so closely related to the Title VII claim that it forms part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

12. This Court has personal jurisdiction over this matter because the Defendant is located in this District, conducts substantial business activity in this District, and because many of the unlawful acts described herein occurred in this District and gave rise to the claims alleged.

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

13. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

14. Plaintiff has fully exhausted his administrative remedies under Title VII.

15. Plaintiff dual filed an administrative Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"), the Pennsylvania Human Relations Commission (hereinafter "PHRC"), and the Philadelphia Commission on Human Relations ("PCHR"). The EEOC assigned the Charge of Discrimination No. 530-2020-05014, a true and correct copy of which is attached hereto as Exhibit "A," complaining of race and retaliation discrimination as set forth herein.

16. On or about May 28, 2021, the EEOC issued to Plaintiff a notice of right to sue, a true and correct copy of which is attached hereto as Exhibit "B."

17. Plaintiff files this Complaint within ninety (90) days of receipt of the notice of right to sue letter relative to Charge No. 530-2020-05014.

18. Accordingly, Plaintiff has fully complied with all Title VII administrative prerequisites for the commencement of this action.

19. Plaintiff shall move to amend this Complaint to add his claims under the PHRA and PFPO after administratively exhausting their prerequisites. Plaintiff's PHRA and PFPO claims however will mirror identically his federal claims.

## STATEMENT OF FACTS

20. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

21. On or about May 2017, Mr. Jones began his employment with the Defendant at a Warehouse Associate II at its Fort Washington, PA facility.

22. Mr. Jones has worked in warehouse and shipping & handling almost his entire working life.

23. Mr. Jones takes great pride in is work ethic. In fact, during his employment with the Defendant his would set written weekly goals for himself.

24. During his employment with the Defendant, Mr. Jones performed his job duties in a satisfactory manner.

25. Review of his performance evaluations reveals that the full year Mr. Jones was employed by Defendant, he received a "fully meets" expectation rating, followed by a "partially meets" expectation rating due to his use of overtime which was approved by his direct supervisor.

26. Mr. Jones reported directly to Marquiz Vazquez, a Latino male and first-time supervisor.

27. For almost three years, Mr. Jones worked at Johnson & Johnson without incident. This all changed after his co-worker – Emanuel Rodriguez – was promoted to the Warehouse Associate III position.

28. Mr. Rodriguez is a Latino male who previously worked with Mr. Vasquez at another job. Mr. Rodriguez is less experienced in warehouse work than Mr. Jones but has been with Defendant longer than Mr. Jones.

29. After, it became public knowledge that Mr. Rodriguez was promoted to the Warehouse Associate III position, Mr. Jones asked his supervisor in private what he could do to ensure that he would be promoted when the next opportunity arose. During that discussion, Mr. Jones also asked why Mr. Vasquez recommended Mr. Rodriguez for promotion over him when it was well known that Mr. Rodriguez struggles with interpersonal relationships with co-workers, does the bare minimum at work, and never volunteers for overtime when needed (Mr. Rodriguez would turn down assignments because he preferred to work through various ridesharing apps).

30. In response, Mr. Vasquez stated that Mr. Jones was not promoted at that time because he "used too much overtime." Overtime that Mr. Vasquez approved. The conversation ended by Mr. Vasquez telling Mr. Jones that he was on track to be promoted next year. Mr. Jones left that meeting feeling hopeful and understood what he needed to do to be promoted.

31. Later that same day, Mr. Jones needed to speak with Mr. Rodriguez about a work-related question. As Mr. Jones approached Mr. Rodriguez, Mr. Rodriguez immediately launched into a tirade of profanities directed at Mr. Jones. Mr. Jones walked away to deescalate the situation.

32. It was commonly known in the warehouse that Mr. Rodriguez frequently engaged in actions that violated Defendant's policies and rose to the level of unlawful discrimination.

33. After the situation had deescalated, Mr. Jones informed Mr. Vasquez what transpired. Instead of disciplining Mr. Rodriguez for violating multiple Defendant's policies, Mr. Vasquez told Mr. Jones to give Mr. Rodriguez "some space" because he "overheard our earlier conversation."

34. Mr. Jones complied with Mr. Vasquez's direction and finished the workday without incident.

35. Upon reporting to work the next day, Mr. Jones said hello to Mr. Rodriguez, in response Mr. Rodriguez stated, "good morning my ass." Mr. Rodriguez then again launched into a tirade of profanities and physically threatened Mr. Jones.

36. During his tirade, Mr. Rodriguez called Mr. Jones a "fucking monkey."

37. Again, Mr. Jones did not engage and deescalated the situation by leaving the area. Mr. Jones immediately reported the incident to Mr. Vasquez who accompanied him back to the work area.

38. Once they arrived in the work area, Mr. Rodriguez made a monkey gesture, placed his hands under his arms and stated that Mr. Jones was "nothing but a big monkey." Mr. Vasquez had to physically remove Mr. Rodriquez from the work area.

39. Mr. Jones was badly shaken by the incident of severe racial discrimination and attempted physical violence in the workplace.

40. Mr. Jones immediately called Scott Miller who told Mr. Jones to wait for him in the break room. On the way to the break room, Mr. Jones informed another supervisor, Danee Howard, about the physical threats of violence and racial slurs. Following Mr. Miller's arrival, Mr. Jones again recounted the incident informing him of the physical threats of violence and racial slurs.

41. After Mr. Jones met with Mr. Miller, he left the workplace because he was so shaken by the incident.

42. When Mr. Jones returned home, he also reported the incident to Johnson & Johnson's Creddo Hotline.

43. Following the conversation, Mr. Jones received an email confirming that his complaint was received, would be investigated and the results reported back to him.

44. On July 22, 2020, Mr. Jones called Mr. Miller and stated that he would like to return to the workplace. Mr. Jones needed to keep working as he just recently purchased a house for his family. In response, Mr. Miller stated that he should just stay home and enjoy his time with his family, that the complaint had been escalated to employee relations and that an investigator would reach out to him soon.

45. On July 23, 2020, Mr. Miller called Mr. Jones and informed him that the investigator would interview him on July 24, 2020.

46. On July 24, 2020, Mr. Jones was interviewed concerning the two incidents. During that conversation, Mr. Jones again recounted Mr. Rodriguez's racial slurs and physical threats of violence. During that same conversation, the investigator asked Mr. Jones if he made a sexual comment on July 20, 2020 about Mr. Rodriguez.

47. Mr. Jones vehemently denied making such a comment because it did not happen.

48. Moreover, as described above, it is well known that Mr. Rodriguez frequently engages in sexual banter in the workplace.

49. Following the conversation, Mr. Jones texted Mr. Miller alerting him to the fact that he had been interviewed.

50. On July 27, Mr. Miller texted Mr. Jones and stated that he would not receive another update until July 29, 2020. On July 29, 2020, Mr. Miller again texted Mr. Jones and stated there was no update but he hoped there would be one on July 30, 2020.

51. On July 30, 2020, no update was given and Mr. Jones, eager to get back to work, texted Mr. Miller to see if he should report to work the next day. Mr. Miller did not respond to his text or return his phone call.

52. On July 31, 2020, Mr. Miller and Julieann Sommer of HR called Mr. Jones at 9:30 a.m. Incredulously, Mr. Miller informed Mr. Jones he was being terminated for allegedly making a sexual comment to Mr. Rodriguez on July 20, 2020.

53. Mr. Jones' termination was in retaliation for opposing unlawful race discrimination.

54. Neither Mr. Miller or Ms. Sommer addressed Mr. Jones' complaints of race discrimination and the threatened physical violence. At no time, did anyone at J & J ever apologize or address the substance of his complaints.

55. Mr. Jones would not have been terminated from his position if he had not filed an internal complaint pursuant to Defendant's policies and procedures. If he had ignored the racial slurs and physical threats of violence, he would still be working today.

56. Moreover, had the Defendant actually enforced its policies against unlawful discrimination in the workplace and not allowed Mr. Rodriguez to continue in discriminatory behavior prior to the incident, the incident would have never occurred.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Defendant's Violation of Title VII
### 42 U.S.C.S. § 2000e-(a)(1)
### Different Treatment/Termination

57. Mr. Jones incorporates the preceding paragraphs and sets forth more fully at length herein.

58. Mr. Jones is an African American male individual within the meaning of Title VII.

59. Mr. Jones, as described more fully below, was subjected to racial slurs and threats of physical violence because of his race, African American.

60. Mr. Jones' disparate treatment led to his termination because of his race.

61. No legitimate, non-discriminatory reason exists for Mr. Jones' termination.

62. Mr. Jones was terminated from his employment in violation of Title VII.

63. Defendant acted with malice or a reckless indifference to Mr. Jones' rights, thereby warranting the imposition of punitive damages.

**WHEREFORE**, Mr. Jones seeks the damages sets forth in the Prayer for Relief of this Complaint.

### SECOND CLAIM FOR RELIEF
### Defendant's Violation of Title VII
### 42 U.S.C. § 2000e-3(a)
### Retaliation

64. Mr. Jones incorporates the preceding paragraphs and sets forth more fully at length herein.

65. Mr. Jones engaged in protected activity.

66. Specifically, he opposed race discrimination in the workplace.

67. There is a causal connection between Mr. Jones' opposition to unlawful race discrimination and his termination.

68. No legitimate, non-discriminatory reason exists for Mr. Jones' termination.

69. Mr. Jones was terminated from his employment in retaliation for opposing unlawful race discrimination in violation of Title VII.

70. Defendant acted with malice or a reckless indifference to Mr. Jones' rights, thereby warranting the imposition of punitive damages.

**WHEREFORE**, Mr. Jones seeks the damages sets forth in the Prayer for Relief of this Complaint.

### THIRD CLAIM FOR RELIEF
### Defendant's Violation of 42 U.S.C. § 1981
### Race and Retaliation

71. Mr. Jones incorporates the preceding paragraphs and sets forth more fully at length herein.

72. During Mr. Jones' employment with Defendant, he was subjected to discrimination through verbal reprimands and derogatory and disparate treatment because of his race and/or his objections to/complaints of race discrimination by his direct supervisor.

73. Instead of remedying the race discrimination, Defendant's upper management allowed the race discrimination to continue unchecked.

74. Following his complaints of race discrimination (discussed *supra*), Mr. Jones was abruptly terminated on or about July 31, 2020.

75. Plaintiff believes, and therefore avers, that he was terminated because of his race and his objections to/complaints about race discrimination.

76. These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

**WHEREFORE**, Mr. Jones seeks the damages sets forth in the Prayer for Relief of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jonathan Jones, prays for relief as follows:

(a) Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

(b) Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay, and benefits Plaintiff would have received had it not been for Defendant's illegal action, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

(c) Compensatory damages;

(d) Punitive damages under Title VII;

(e) Liquidated damages;

(f) Emotional pain and suffering;

(g) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which violate Title VII, PHRA and Philadelphia's Fair Practice Ordinance;

(h) An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(i) Pre-judgment and post-judgment interest, as provided by law; and

(j) Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Jones demands a trial by jury in this action.

Respectfully submitted,

By: _/s/ Ryan A. Hancock_

**WILLIG, WILLIAMS & DAVIDSON**
Ryan Allen Hancock
Attorney I.D. No. 92590
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: (215) 656-3679
Facsimile: (215) 561-5135
Email: rhancock@wwdlaw.com

*Counsel for Plaintiff*

Dated: August 23, 2021